# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3142
_____

United States of America

*Plaintiff - Appellee*

v.

Shelly Ketcher

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville
_____

Submitted: January 12, 2026
Filed: July 31, 2026
_____

Before LOKEN, ARNOLD, and GRUENDER, Circuit Judges.
_____

LOKEN, Circuit Judge.

Shelly Ketcher pleaded guilty to one count of money laundering in violation of 18 U.S.C. § 1957 and one count of filing a false federal income tax return in violation of 26 U.S.C. § 7206(1) after she embezzled approximately $2.7 million from a business and its owner. Prior to sentencing, the Final Presentence Investigation Report (PSR) determined a total offense level of 26 and a criminal history category of IV, resulting in an advisory guidelines sentencing range of 92 to 115 months

imprisonment. At the sentencing hearing, the parties advised that all PSR objections were resolved; the district court[1] adopted the PSR in full.

After the court heard victim impact statements, the defense urged a within-range sentence, the government urged an upward variance, and Ketcher stated that she "take[s] full responsibility for my actions" because "it's the right thing to do." The district court then explained at length that it would vary upward due to the "egregiousness of the embezzlement . . . against a background of three prior convictions for fraud or embezzlement" and sentenced Ketcher to 120 months imprisonment on count one and a consecutive 36 months on count two for a total of 156 months imprisonment. Ketcher appeals, arguing the district court's sentence is substantively unreasonable. We affirm.

We draw the following background from the factual paragraphs of the PSR. Between 2018 and 2023, Ketcher worked for South Delta Aviation (SDA). When hired as a bookkeeper by SDA's owner, D.R., Ketcher misrepresented herself as a CPA and failed to disclose that she was acquitted of a federal embezzlement charge in 1991, pleaded guilty in 2005 to embezzling $17,000 from a radio station for which she worked as an auditor, was convicted in federal court in 2006 for stealing $84,000 from a non-profit organization serving children with special needs while employed as its director of finance, and pleaded guilty in 2009 to embezzling $24,000 in funds from a business by forging checks. D.R. was unaware of this criminal history.

Ketcher also managed D.R.'s personal affairs. She was not authorized to sign checks on his behalf. In 2023, D.R. discovered he was delinquent on his property taxes from 2021. D.R. confronted Ketcher, who assured him she had paid his taxes and showed him a forged check and bank statement as proof. When he contacted the

---

[1]The Honorable Timothy L. Brooks, then United States District Judge for the Western District of Arkansas, now Chief Judge.

bank, D.R. discovered the forgeries. After firing Ketcher and auditing his accounts, D.R. discovered Ketcher had forged his signature on approximately 1,010 checks, making the checks payable to herself, her family, and her friends. All told, Ketcher stole approximately $2.7 million from D.R. and SDA.

At the sentencing hearing, D.R. in a victim impact statement stated he had intended to sell SDA and retire around age 75 but now "will have to work until [he] can't anymore[]" due to Ketcher's fraud. D.R.'s wife, M.R., gave a victim impact statement stating that, after she and D.R. "welcomed [Ketcher] with open arms," she "started robbing us the first week" and "started traveling, buying new vehicles, shopping for expensive designer clothes, shoes, et cetera, with all the stolen money." M.R. said that D.R. lost 40 pounds and had two surgeries from health complications due to stress caused by Ketcher's fraud. In concluding her remarks, M.R. said:

> The worst memory I have of Shelly's evil heart haunts me, when my mom died. . . . I had to sell clothes, jewelry, and furniture to get a headstone. Meanwhile, Shelly gave her mother 600,000 of our money. She doesn't care how much time she gets. She will just come out more educated to steal. Her mother, brother, son, and daughter-in-law have $1.5 million cash given to them, so she has plenty to come home to.

After these statements, the government requested an upward variance, arguing Ketcher's previous convictions show she purposely sought out opportunities to defraud others and showed no remorse. Defense counsel requested a sentence within the guidelines range because the government's professed aggravating factors -- prior convictions and financial hardship imposed on victims -- were already accounted for in the Guidelines calculation. Counsel emphasized as mitigating factors her chronic health problems and extensive abuse by her parents and multiple romantic partners.

The district court's explanation of its sentence was extensive. Regarding "the relative seriousness of the offense" factor, the court stated:

I have frequently remarked that the fraud guideline frequently sets the base offense level too low . . . . [I]t's almost like the guidelines sometimes fail to take into account that there are real victims in fraud cases and that it can profoundly affect people. . . . Fraud, fraudulent conduct, embezzlement, stealing from the government, those are serious crimes. . . . As to the totality of the facts and circumstances that I must consider, I think the offense conduct here is . . . very aggra[va]ting on so many levels and facets that it's almost hard to get one's mind around.

The court further explained that the amount Ketcher stole, the number of checks she forged, and the complexity and duration of her fraud were all aggravating. The victims "brought [Ketcher] into a family" and yet she "systematically stole from [them] day after day . . . while [she] lived apparently a lavish lifestyle[.]" The court went on to say:

Suffice it to say, you have used up all of your second chances. I find your criminal history aggravating in and of itself . . . because you keep committing the exact same crimes. . . . And you have some weird, twisted [idea] that taking other people's money and buying stuff for yourself, that that's what makes you feel good and you are going to keep doing that regardless of the harm that it causes others. And I find that disgusting and I find it pathetic. . . . I find it evil. And I find that nothing, that none of your prior interactions with the criminal justice system have deterred your conduct. . . . [Y]ou, ma'am, are someone who this Court believes is highly likely to recidivate. . . . [E]very single purpose for which we have federal sentences and that the Court must consider are viewed in an aggravating manner here.

In addition to enumerating Ketcher's prior fraud convictions, the court found her federal court acquittal of embezzlement at age 25 "interesting." "[O]ne indictment for which you were acquitted and then after that three separate embezzlement type theft convictions, one would have thought that that's when you would have decided

to do the right thing and to not keep stealing from people. But it wasn't the last time, as we know."

On the mitigation side, the district court acknowledged that violence had been "normalized" for Ketcher due to extensive abuse by her parents and romantic partners, that Ketcher waived the indictment process, that her college education indicated she had "the ability to be successful in life," that her chronic medical conditions like Addison's disease were incapacitative, and that she likely had some "underlying mental health issues" that could be treated in prison. The court noted it tended to vary upward for defendants convicted of fraud and had considered national data on fraud convictions but concluded that, in spite of the mitigating factors, the "egregiousness of the embezzlement . . . committed over such a long period of time against a background of three prior convictions for fraud or embezzlement is simply too aggravating in this Court's estimation to justify a guideline range sentence."

Ketcher objected to the district court's reliance on the acquitted charge. The court stated it did not presuppose Ketcher's guilt but considered it because the charge should have given her "a heightened awareness not to engage in conduct for which [she] had to suffer an indictment[.]" Ketcher also argued the court "appeared to exhibit a personal animus" toward her, an improper basis for varying upward, by describing her as "pathetic, twisted, disgusting," and "evil." The court responded:

> [T]he court's terms were descriptions of her offense conduct. . . . I called the context of stealing from people over five years who had kind of taken her in to their small business family, I referred to the conduct as pathetic, twisted, disgusting and evil. I think the record is clear about that. If it's not, I at least want Ms. Ketcher to know it was not my intent to demagogue her individually. . . . [I]t is the offense conduct for which I was using those descriptive terms; not the defendant as an individual.

On appeal, Ketcher argues the upward variance rendered her sentence substantively unreasonable. We review the substantive reasonableness of a sentence for abuse of discretion. "A district court abuses its discretion when it (1) fails to consider a relevant factor that should have received significant weight; (2) gives significant weight to an improper or irrelevant factor; or (3) considers only the appropriate factors but in weighing those factors commits a clear error of judgment." United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (cleaned up). It is "the unusual case when we reverse a district court sentence -- whether within, above, or below the applicable Guidelines range -- as substantively unreasonable." Id. at 464 (quotation omitted).

Ketcher argues the district court abused its discretion by (1) not giving proper weight to mitigating circumstances, (2) imposing a sentence that was harsher than similarly-situated defendants nationwide, and (3) grounding its sentence in personal animosity.

(1) The district court has "wide latitude to weigh the § 3553(a) factors in each case and assign some factors greater weight than others in determining an appropriate sentence." United States v. Bridges, 569 F.3d 374, 379 (8th Cir. 2009). Here, the district court was well within its discretion to weigh aggravating factors more heavily than mitigating factors and impose an upward variance grounded in factors already contemplated by the Guidelines -- the egregious nature of Ketcher's offense conduct and her criminal history of repeated stealing offenses that indicated a high likelihood to reoffend. See, e.g., United States v. Luscombe, 950 F.3d 1021, 1032 (8th Cir. 2020); United States v. Williamson, 782 F.3d 397, 400 (8th Cir. 2015). Particularly in light of the court's extensive review and explanation of aggravating factors that the court found outweighed mitigating factors the court expressly recognized, we conclude its decision to impose an upward variance was well within the bounds of a sentencing court's substantial sentencing discretion.

Early in its lengthy explanation, the district court expressed its belief that the Guidelines understate the impact of fraud on victims. Ketcher complains this is an improper basis for an upward departure. The Supreme Court rejected this argument nearly twenty years ago:

> [W]e now clarify that district courts are entitled to reject and vary categorically from the crack cocaine Guidelines based on a policy disagreement with those Guidelines.

Spears v. United States, 555 U.S. 261, 265-66 (2009). We have followed that directive in many cases. See, e.g., United States v. Anderson, 29 F.4th 388, 390-91 (8th Cir. 2022) ("the sentence should survive appellate inspection when . . . the district court properly weighed the impact of its overall disagreement with the [guidelines] *in this case*") (quotation omitted) (emphasis in original).

Ketcher further argues the district court abused its discretion by considering and giving weight to her prior acquittal of a federal embezzlement charge, thereby presuming she committed the acquitted offense. We disagree. Sentencing courts may consider "specific facts underlying [] arrests" when imposing an upward variance "to draw conclusions about characteristics relevant to sentencing factors enumerated in 18 U.S.C. § 3553(a)." United States v. Boyd, 956 F.3d 988, 991-92 (8th Cir. 2020). Here, the district court did exactly that -- without regard to whether Ketcher was guilty of the acquitted offense, the court explained, it considered that being prosecuted for embezzlement in early adulthood should have dissuaded her from committing similar crimes, yet Ketcher amassed three later convictions for similar fraud and embezzlement crimes before embarking on five years of stealing the victims' money by fraud, forgery, and embezzlement in this case. The court reasonably concluded that this persistent pursuit of crimes involving stealing other people's money indicated a high likelihood of recidivism.

(2) We likewise reject Ketcher's disparity argument. "An argument that non-conspirator defendants received shorter sentences for comparable offenses is at base a disagreement with the weighing of the § 3553(a) factors. This disagreement does not demonstrate an abuse of discretion." United States v. Soliz, 857 F.3d 781, 783 (8th Cir. 2017) (citation omitted), cert. denied, 583 U.S. 1044 (2018).

(3) Finally, viewing the sentencing record as a whole, we conclude Ketcher does not provide convincing evidence that her sentence was motivated by personal animosity. She does not argue the district court's statements rise to the level of mandatory recusal. See 28 U.S.C. § 455; United States v. Johnson, 163 F.4th 518, 523 (8th Cir.), cert. denied, 2026 WL 1127247 (Apr. 27, 2026). The district court did not "display a deep-seated favoritism or antagonism that would make fair judgment impossible." Johnson, 164 F.4th at 523. The district court's extensive acknowledgment of Ketcher's difficult life and ability to be successful following prison undermine any suggestion of antagonism. Responding to Ketcher's objection, the district court explained that its criticism concerned Ketcher's offense conduct, not her personal character. Even if the district court's comments could be viewed as reflecting an intent to disparage Ketcher's character, these comments would not constitute an abuse of discretion. The victim's wife, M.R., used the word "evil" in describing Ketcher's inexcusable abuse of D.R.'s trust and generosity to steal the fruits of his business endeavors. A defendant's personal character is a paradigmatic § 3553 factor. See 18 U.S.C. § 3553(a) ("The court, in determining the particular sentence to be imposed, shall consider -- (1) the nature and circumstances of the offense and the history and characteristics of the defendant"); cf. United States v. Walsh, 47 F.4th 491, 498 (7th Cir. 2022) (no abuse of discretion to increase the defendant's sentence after he launched into an angry tirade that revealed his "character, his risk of recidivism, and the danger he posed to the public.").

The judgment of the district court is affirmed.

_____